UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

ROY C. JACKSON                      CIVIL ACTION 3-04-2296

VERSUS                                U.S. DISTRICT JUDGE ROBERT G. JAMES

FORD MOTOR COMPANY

                                       U.S. MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by defendant, Ford Motor Company (Ford), Doc. #27), referred to me by the district judge for Report and recommendation. Plaintiff Roy C. Jackson (Jackson) filed suit against Ford arguing that Ford is obligated to give him a Ford dealer location franchise and also that Ford owes Jackson his share of an investment that he made in a failed dealer franchise location. Jackson also makes claims under Louisiana's Unfair Trade Practices Act (LUTPA). In support of its motion for summary judgment Ford argues that it never promised Jackson a dealer location and that it has already returned Jackson's investment in the failed franchise. Ford also argues that Jackson has signed a release fully releasing Ford from all obligations and that Jackson's claims under LUTPA are prescribed.

<u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

"shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v.

Intercontinental Mfg. Co., Inc., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Izen v. Catalina 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

## Facts

According to the evidence before the court, Ford sells cars and trucks which it manufactures to a network of independent dealers, which in turn sell to the public. Most dealers are owned by individual entrepreneurs who have their own capital at risk in the dealerships. Some, however, are dealerships created pursuant to Ford's Dealer Development program which

assists persons who cannot afford the substantial investment necessary to buy or establish a dealership. Ford invests up to 90% of the capital and the individual investor contributes the rest. Most Dealer Development operators, like Jackson, are members of a minority race. The company is organized as a separate corporation and the operator acts as general manager of the dealership.

Prior to 2000, Jackson had served as Dealer Development operator at two failed Ford dealerships. In 2000, Jackson and two other individuals, Kim McTurner and John T. Brodnax, applied for and were approved for another dealership in Durant Oklahoma. Jackson, McTurner and Brodnax created a limited liability company (LLC) under Louisiana law and the LLC invested the sum of $220,000 in the venture with Ford. Contracts were signed between the LLC, Louisiana Enterprise Group, LLC, and Ford. Nine months later, as the dealership was losing money, the LLC agreed to resign from the Dealer Development agreements. The three LLC members, including Jackson, signed a resignation letter which is in evidence.

In connection with unwinding the deal, Ford's Dealer Development Manager-East, Eugene Anglebrandt, conducted an "exit interview" with Jackson. Jackson was told that he would be given a favorable recommendation to others at Ford if another dealership opportunity presented itself. The parties disagree as to whether Jackson was told at that time that others at Ford would make the ultimate decision whether Jackson would actually receive another location, or "point". An Operator Exit Assessment form was completed and signed by Jackson and Anglebrandt. The form indicated that "given the right circumstances Mr. Jackson could be successful as a DD Operator." The word "yes" was checked for "Recommendation for Another Point".

Jackson never received another dealership and, through his attorney, began a letter

writing campaign in which he demanded that he be given another dealership. After the LLC's resignation, Ford sent a check in the amount of $220,000 to the LLC. The check was mailed to McTurner's address because at the time Jackson was in the process of moving. In addition, a release was signed by all three members of the LLC on behalf of the LLC. A Ford representative testified that the normal procedure for a refund would have been to hand deliver the check at the same time that the release was executed.

The check was cashed but Jackson received from McTurner only a part of his investment in the LLC.

Analysis

<u>Ford's obligation to provide Jackson a point.</u>

In Jackson's petition filed in state court he does not expressly assert a cause of action for breach of contract. Yet no other basis for plaintiff's claims is apparent other than a claim that Ford's actions breach some obligation Ford has to plaintiff. The undisputed evidence before the court shows, however, that there exists no contract between Ford and Jackson in which Ford promised to do anything. Ford's promise to recommend Jackson for a point if one became available is just that, a promise to make a recommendation if the appropriate circumstances presented themselves. Jackson has not shown a promise by Ford to actually provide him a dealership. The only document to which plaintiff refers the court is the Operator Exit Assessment form. This document falls far short of constituting a contract obligating Ford to provide plaintiff a dealership. Plaintiff has not shown that he has provided any cause to Anglebrandt even for his indication that he would recommend plaintiff for another point. Jackson could not reasonably have understood that Anglebrandt could promise Jackson another dealership. Regardless whether

5

Jackson was told that others at Ford would make the ultimate decision, this document simply does not create a contract between Ford and Jackson.

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. Civil Code Art. 1906. A party who demands performance of an obligation must prove the existence of the obligation. La. Civil Code Art. 1831. Here there is no contract. The exit assessment is just that, an assessment of Jackson's performance and his chances for being considered in the future for another chance. No promise was made. Ford has breached nothing. A contract is formed by the consent of the parties, that is a meeting of the minds. La. Civil Code Art. 1927. Here there was no meeting of the minds.

Ford's return of the $220,000 investment.

It is undisputed that Ford mailed its check made payable to the LLC as a return of the LLC's investment. It is equally undisputed that the check was mailed to LLC member McTurner at her address and was cashed. The information before the court does not show who endorsed the check on behalf of the LLC. A copy of the LLC's articles of incorporation is not in the record. Neither is there evidence in the record as to what Ford had been provided, if anything, by the LLC as to who had authority to act on behalf of the LLC. The issue of the authority of the person who cashed the check for the LLC or whether Ford had a right to deal with that person in returning such a large sum of money has not been briefed by the parties. See LSA-R.S. 12: 1317, 12:1305. Therefore, there are genuine issues of material fact as to whether payment by Ford has been made of the $220,000. Neither is defendant's argument that Jackson released Ford from all obligations by signing the release persuasive. For the release was signed in exchange for Ford's paying the money. If there is a question as to whether Ford paid the money,

6

the efficacy of the release is also in question.

The parties are invited to, if they wish to do so, raise this issue by motion for summary judgment supported by proper documentation and with adequate briefing. It should be noted that there appears to be a question as to Jackson's right to pursue the LLC's claim for return of the investment and as to whether the other two LLC members may be necessary parties to that part of this litigation.

Next, Ford argues that Jackson's claims under the LUTPA are prescribed and that, in any event, plaintiff is not a consumer and therefore cannot avail himself of its provisions.

La. R. S. 51:1409(E) provides for a one year prescriptive period which runs from the time of the act. Suit was filed on September 10, 2004. Jackson's claims arose in 2001, more than one year before he filed suit. Jackson's argument that Ford's failure to return the investment and failure to provide him a dealership constitute a continuing tort are unavailing. The continuing tort theory is ordinarily inapplicable to claims under LUTPA. See Glod v. Baker, 899 So. 2d 642, 647 (La.App. 3rd C. 2005); Neill v. Rusk, 745 F. Supp. 362, 365 (E. D. La. 1988).[1] Here the claims do not sound in tort but rather in contract. It is, therefore, unnecessary for this court to consider Ford's alternative argument of whether Jackson would otherwise have a claim under LUTPA.

<u>Conclusion</u>.

There are no genuine issues of material fact concerning Jackson's claim that Ford is obligated to provide him a dealership and Ford is entitled to judgment as a matter of law.

---

[1] But see Tubos de Acero de Mexico, S.A. v. American Int'l Inv. Corp., 292 F.3d 471, 481 (5th Cir. 2002) which is inapplicable to the facts of this case.

Similarly, there are no genuine issues of material fact as to plaintiff's LUTPA claim and Ford is entitled to judgment on that claim as well, as a matter of law. However, there exist genuine issues, at least on the evidence thus far presented, as to whether Ford has returned the plaintiff's investment and as to whether the release is valid as having been supported by cause.

FOR THE FOREGOING REASONS, IT IS RECOMMENDED THAT Ford be GRANTED summary judgment as to plaintiff's contract and LUTPA claims. IT IS FURTHER RECOMMENDED THAT Ford's motion be DENIED as to plaintiff's claims for return of his investment and as to the validity of the release.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing.  Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND E-SIGNED in chambers, in Alexandria, Louisiana, on this the 9th day of November, 2005.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE