UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ROY C. JACKSON | CIVIL ACTION 3-04-2296 |
| VERSUS | U.S. DISTRICT JUDGE ROBERT G. JAMES |
| FORD MOTOR COMPANY | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment filed by defendant, Ford Motor Company (Ford), **Doc. #47**), referred to me by the district judge for Report and recommendation. Plaintiff Roy C. Jackson (Jackson) filed suit against Ford arguing that Ford is obligated to give him a Ford dealer location franchise and also that Ford owes Jackson his share of an investment that he made in a failed dealer franchise location. Jackson also makes claims under Louisiana's Unfair Trade Practices Act (LUTPA).

Following Report and Recommendation, Doc. #35, the district judge dismissed Jackson's contract claims and his LUTPA claims but denied summary judgment as to Jackson's claims for return of his investment.

Ford now re-urges summary judgment with regard to Jackson's return of his investment claim.

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 at 2552; International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. Little v. Liquid Air Corporation, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Izen v. Catalina 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

Facts

According to the evidence before the court, Ford sells cars and trucks which it

manufactures to a network of independent dealers, which in turn sell to the public. Most dealers are owned by individual entrepreneurs who have their own capital at risk in the dealerships. Some, however, are dealerships created pursuant to Ford's Dealer Development Program which assists persons who cannot afford the substantial investment necessary to buy or establish a dealership. Ford invests up to 90% of the capital and the individual investor contributes the rest. Most Dealer Development operators, like Jackson, are members of a minority race. The company is organized as a separate corporation and the operator acts as general manager of the dealership.

Prior to 2000, Jackson had served as Dealer Development operator at two failed Ford dealerships. In 2000, Jackson and two other individuals, Kim McTurner and John T. Brodnax, applied for and were approved for another dealership in Durant Oklahoma. Jackson, McTurner and Brodnax created a limited liability company, The Louisiana Enterprise Group, LLC (LLC) under Louisiana law and the LLC invested the sum of $220,000 in the venture with Ford. Contracts were signed between the LLC and Ford. Nine months later, as the dealership was losing money, the LLC agreed to resign from the dealer development agreement. The three LLC members, including Jackson, signed a resignation letter on behalf of the LLC on June 21, 2001 which is in evidence and which recited that, in exchange for the resignation of the LLC, Ford would pay to the LLC the sum of $220,000, the amount of the LLC's initial investment.

After the LLC's resignation, Ford mailed a check in the amount of $220,000 made payable to the LLC to member McTurner. The check was mailed to McTurner's address because at the time Jackson was in the process of moving. A Ford representative testified that the normal procedure for a refund would have been to hand deliver the check at the same time that the release was executed.

4

The check was deposited into the LLC's bank account but Jackson received only a part of his original investment in the LLC.

Analysis

It is undisputed that Ford mailed its check made payable to the LLC as a return of the LLC's investment. It is equally undisputed that the check was mailed to LLC member McTurner at her address and was deposited into the LLC's bank account.

Plaintiff argues that he was a Ford dealer and that he never received the return of all of his investment. He asserts that his money was sent to a "third party".

The facts shown in the evidence before the court are that plaintiff was never a Ford dealer. Instead, The Louisiana Enterprise Group, LLC became a Ford dealer. Jackson was one of three members of the LLC. Jackson never had any contract with Ford. Further, it was the LLC who made the investment in the dealership. It is the LLC, not Jackson, who has a right to sue Ford with regard to disputes arising out of its agreement with Ford. In Louisiana, a limited liability company has the procedural capacity to sue in the company name to enforce its rights. La. CCP Art. 690. See Glod v. Baker, 851 So.2d 1255 (La. App. 3rd C. 2003).

In this case, however, the evidence shows that Ford did return the LLC's investment to it. The affidavit of Eugene H. Anglebrandt, Jr. attests that Ford issued a check in the amount of $220,000 to the LLC. A copy of the check in the record reflects that it was issued to the LLC. The check was mailed to the address belonging to LLC member McTurner and was deposited into the bank account belonging to the LLC. From there, the funds were distributed to the members, including Jackson. Plaintiff testified in deposition that he called McTurner and she advised him that she had received the check from Ford.

Louisiana law provides that the articles of a limited liability company may set forth a statement as to whether and to what extent there are limitations on the authority of members to bind the limited liability company or that such limitations are contained in a written operating agreement. The articles may also set forth whether and to what extent the company will be managed by a manager. The Articles of Organization of this LLC provide that the LLC shall be managed by a manager who was Roy Jackson. In the very short Articles, the manager's duties and responsibilities are not set forth except as follows:

> "Miscellaneous Provisions
>
> The Manager shall have the exclusive authority to determine the declaration, payment or distribution of any earnings, dividends, or profits to the Members and may in his sole discretion retain any and all assets, earnings, or surpluses of every nature and kind for and on behalf of the Company."

The Articles do not set forth any limitations on the authority of members in accordance with La. R.S.12:1305. Specifically, the Articles do not contain any provision which limits members' authority with regard to the handling of the assets, including bank accounts, of the LLC. A reading of the limited liability company statutes in *para materia* do not reflect any intent by the Louisiana legislature to limit members' authority or ability to act for the company just because a manager is named. In this case the Articles do not state "to what extent" the affairs of the company are to be managed by the manager. La. R.S. 12:1305. While persons dealing with the LLC are held to know of limitations on the authority of members, in this case, there are none. Ford was entitled to mail the check to an LLC member on behalf of the LLC.

However, even if we were to hold that Ford could not deal with a member of the LLC, but

6

only with the manager, the result would be the same. For in this case, the LLC resigned as operator of the dealership and a release was signed by all three members of the LLC, including Jackson, on June 21, 2001. That release provided that in exchange for the release, Ford would pay to the LLC (not to Jackson) $220,000. Jackson knew that the check would be forthcoming. As manager, he also knew who had authority to sign checks or disburse funds on behalf of the LLC of which he was manager; he knew who had signed signature cards at the bank.

Jackson also knew that McTurner "had the check", according to his deposition testimony. The check was issued July 10, 2001 so Jackson knew the check had arrived shortly after that. Therefore, as manager, he knew that the LLC had received the check from Ford and as manager he was in a position at that time to make any necessary business decisions with his two partners concerning the check or its disbursement. Instead, Jackson waited over three years to complain that he had not received all of his investment.

Regardless of whether Ford properly dealt with McTurner the check ended up in the LLC's bank account with Jackson's knowledge and Jackson received part of the money. At that point it was Jackson, not Ford who was in a position to make sure the check was properly disbursed. In other words, this is not a situation where Ford dealt with an unauthorized person who ran off with the money. Here the money was deposited into the payee's bank account and Jackson was manager of the payee company. If Ford's money was deposited into the LLC's bank account, it can hardly be said that Ford has never paid the money. In any event, having received the funds from the check, Jackson ratified McTurner's act of accepting the check on behalf of the company and he is, therefore, estopped from denying McTurner's authority to disburse the check. See 3 A's Towing Co. v. P & A Well Service, Inc., 642 F.2d 756, 758 (5th Cir. 1981). (In

general, a ratification occurs when personnel with the authority to bind the company "acquire knowledge of the unauthorized act and thereafter fail to repudiate it within a reasonable period of time...." A finding of ratification "is particularly applicable where the delay in repudiating is a long one" and "where the failure to repudiate is accompanied by acts indicating approval of the unauthorized act such as receiving and retaining the benefits accruing from it.")

Because the release is supported by valid cause (consideration), it is effective to release Ford from any claims by the LLC.

In summary, Ford had no contractual or other obligation to Jackson personally; its only contract was with the LLC. Jackson has no personal claim against Ford and no right under Louisiana law to pursue a claim on behalf of the LLC. Further the LLC (which has not sued) has no claim, for it received the full amount of its investment from Ford and deposited it into its bank account.

For the foregoing reasons, IT IS RECOMMENDED that Ford be GRANTED summary judgment as to plaintiff's claims for return of his investment and as to the validity of the release.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND E-SIGNED in chambers, in Alexandria, Louisiana, on this the 31st day of March, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE